[No. 10,970. In Bank.—June 3, 1884.]

# EX PARTE S. C. BENJAMIN ON HABEAS CORPUS.

License Tax — County Government Act. — The effect of the act known as the County Government Act, determined with reference to the validity of an ordinance adopted by the board of supervisors of San Bernardino County, imposing a license tax on the sale of spirituous liquors. The act went into operation on the 14th of May, 1883, and the ordinance was adopted on the 16th of the same month, at a session of the board commenced on the 7th of the month, and continued by adjournment from day to day. The ordinance was held to be valid, and it was also held that the Act of the 13th of March, 1883, relating to license taxes, was superseded and repealed by the County Government Act.

Application for writ of habeas corpus. The facts are stated in the opinion of the court.

*Henry M. Willis*, for Petitioner.

*R. E. Bledsoe*, and *Satterwhite & Curtis*, for Respondent.

Ross, J.—The petitioner is held for a violation of an ordinance adopted by the board of supervisors of San Bernardino

County, imposing a license tax on, among other things, the sale of spirituous and malt and fermented liquors and wines, in less quantities than one quart. The validity of the ordinance is the question in the case. It was adopted on the 16th day of May, 1883, by the board of supervisors, at a session which commenced on the 7th day of May, pursuant to section 4,032 of the Political Code, which read : " The regular meetings of the boards of supervisors must be held at their respective county-seats on the first Mondays in May, August, November, and February of each year, and must continue from time to time until all the business before them is disposed of." . . . . The board not concluding its labors on the first day of its meeting, adjourned until the next, and so on from day to day until the 16th day of May, when the ordinance in question was enacted. In *Ex parte Benninger*, 64 Cal. 291, the same ordinance was under consideration, and it was then urged that it was invalid, because adopted at a time when the board was not legally in session. That contention was based on the claim that the session of the board, which it is conceded on all sides was legally commenced on the 7th of May, was put an end to by section 22 of the act commonly called the County Government Act, which went into effect on the 14th of May, 1883, and which section 22 reads : "The board of supervisors must, by ordinance, provide for the holding of regular meetings of the board at their respective county seats." On the 16th of May, 1883, the board had not provided by ordinance for the holding of regular sessions. We held against the petitioner in the Benninger case, as we must do against the petitioner here. It is manifest that in order for the board of supervisors to provide by ordinance, as they are required to do by the County Government Act, for the holding of regular sessions of the board, there must be a meeting at which such a provision may be made. The County Government Act must be construed with reference to the laws in force at the time of its enactment and taking effect. It did not and clearly was not intended to operate as a repeal of that provision of the Political Code providing for the regular meetings of the board of supervisors, until the board should itself provide for the holding of such regular meetings. The meeting of the board of supervisors of San Bernardino County on the 7th of May, 1883,

being a regular meeting authorized by the section of the Political Code already cited, was a valid meeting, and authorized to adjourn from day to day until all of its business was disposed of. It was therefore legally in session on the 16th day of May, 1883, with power to do such acts as the then existing laws conferred upon it. The question therefore arises, what were then its powers with respect to the imposition of license taxes? The County Government Act had then gone in force. By it the board of supervisors of San Bernardino County is empowered " to license, for purposes of regulation and revenue, all and every kind of business not prohibited by law, and transacted or carried on in such county, and all shows, exhibitions, and lawful games carried on therein ; to fix the rates of license tax upon the same, and to provide for the collection of the same by suit or otherwise." (§ 25, subd. 27.) The act is one to provide a uniform system of county governments. Among other things, it treats of the "general permanent powers" of the boards of supervisors of the several counties, and declares specifically and at length what those powers are. Among them is the power to license, the provision in relation to which is above quoted. The power conferred by that provision includes all the power previously conferred upon the board by the act passed March 13, 1883 (Stats. 1883, p. 297), and more. Nor, in the matter of licenses, did the legislature stop here. By the act passed, and which took effect, March 13, 1883, it had declared that the licenses therein provided for should be collected as then provided for "by the provisions of chapter 15, title 7, part 3, of the Political Code of the State of California." By the County Government Act, it empowered the board of supervisors to provide for the collection of the licenses imposed by virtue of the authority therein conferred, "by suit or otherwise." Again, the legislature in the third section of the Act of March 13th declared : " The board of supervisors of each county must, on the first Monday of October of each year, fix the rates of county licenses, *provided* that after the passage of this act said board of supervisors of each county may, at any general or special meeting of said board, held as required by law, fix the rates of said licenses up to the first Monday of October, A. D. eighteen hundred and eighty-three, and said licenses shall be collected at said rates, for the year

eighteen hundred and eighty-three, until said rates are fixed on said first Monday of October, A. D. eighteen hundred and eighty-three." In the subsequent act to provide a uniform system of county governments, in which, as has been said, the general permanent powers of the board of supervisors of the several counties are specifically defined, there is no such limitation as to time. From all which we conclude that the act entitled "an act to provide a uniform system of county and township governments" superseded and repealed that of March 13, 1883. It results that the powers possessed by the board of supervisors of San Bernardino County on the 16th day of May, 1883, were such as were conferred by the County Government Act; and this being so, it follows further that the ordinance adopted by the board on that day did not expire as contended by the petitioner, at the time specified in the Act of March 13, 1883, that is to say, the first Monday of October, 1883.

It should be added that the question of the repeal of the Act of March 13th was not considered in Benninger's case, the points there being that the ordinance was void: first, because adopted at a time when the board was not legally in session; and secondly, for the reason that it is unreasonable, oppressive, and in restraint of trade.

Prisoner remanded.

MORRISON, C. J., McKINSTRY, J., MYRICK, J., and SHARP-STEIN, J., concurred.